# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:15-cv-6-RLV
# (5:11-cr-73-RLV-DCK-2)

| | |
|---|---|
| JOHN SANFORD JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Response in Opposition, (Doc. No. 8).

## I. BACKGROUND

In 2009, law enforcement officials began investigating a large-scale methamphetamine conspiracy that stretched between Wilkes, Catawba, and Yadkin Counties. (Crim. Case No. 5:11-cr-73-RLV-DSC-2, Doc. No. 563 at ¶ 13: PSR). Pro se Petitioner John Sanford Johnson was identified as an organizer of a large group of individuals who were purchasing pseudoephedrine and using it to make methamphetamine. (Id.). The members who cooked methamphetamine coordinated multiple co-conspirators (also known as "smurfs") to go from pharmacy to pharmacy to purchase the pseudoephedrine needed to manufacture the methamphetamine. (Id. at ¶ 14). Law enforcement officers located at least seventeen methamphetamine laboratories that were involved in the conspiracy; each one used the dangerous "shake and bake" method of manufacturing methamphetamine. (Id. at ¶ 15).

1

As a result of the investigation, Petitioner was charged in a superseding indictment with conspiracy to distribute, possess with intent to distribute, and manufacture at least 500 grams of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. (Count One); possession of pseudoephedrine while having reasonable cause to believe that it would be used to manufacture methamphetamine in violation of §§ 841(c)(2), 802(34)(K) (Count Two); possession of materials to make methamphetamine in violation of § 843(a)(6), (d)(2) and 18 U.S.C. § 2 (Count Three); possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count Four); possession of materials to make methamphetamine in violation of 21 U.S.C. §§ 843(a)(6), (d)(2) and 18 U.S.C. § 2 (Count 6); and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (Counts Eleven and Thirteen). (Id., Doc. No. 198: First Superseding Bill of Indictment). The conspiracy in Count One and the conduct in Count Two were alleged to have occurred from January 2009 until on or about June 18, 2012. (Id. at 2). The conduct on the remaining counts was alleged to have occurred in 2010 or early 2011. (Id. at 4-9). Nineteen other people were named as co-defendants in the superseding indictment, and the total amount involved in the conspiracy was calculated at 3,861.62 grams of pseudoephedrine, which yielded 3,552.70 grams of methamphetamine. (Id., Doc. No. 563 at ¶ 14).

Petitioner was found to be responsible for 500 grams, but less than 1.5 kilograms, of a methamphetamine mixture, as well as 206.16 grams of pseudoephedrine, based on pseudoephedrine logs that showed that he purchased pseudoephedrine on 94 occasions between November 2009 and April 2011. (Id. at ¶ 84). The presentence report ("PSR") detailed extensive evidence of Petitioner's involvement in obtaining and providing pseudoephedrine, teaching others how to manufacture methamphetamine, and manufacturing large quantities of

methamphetamine on numerous occasions. (Id. at ¶¶ 13-84). At least twenty-six witnesses, including a number of co-conspirators, provided statements to investigators describing Petitioner's involvement in the offenses. (Id.). Petitioner was described by agents as a cook, distributor, smurfer, and leader in the conspiracy. (Id. at ¶ 84).

On February 8, 2013, Petitioner pleaded guilty without a plea agreement to all of the counts, except the firearm count (Count Four), which was dismissed without prejudice on the Government's motion. (Id., Doc. No. 371: Acceptance and Entry of Guilty Plea; Doc. No. 388: Order). At the plea hearing, Petitioner stated under oath that he had received and discussed the indictment and any possible defenses with his attorney; that he understood the nature of the charges to which he was pleading guilty, the minimum and maximum penalties he faced, as well as the fact that he could not withdraw his plea if he received a sentence more severe than he expected; and that he was satisfied with his attorney's services. (Id., Doc. No. 371 at ¶¶ 8-9; 16; 25; 27-29). He admitted that he was guilty of the charges. (Id. at ¶ 23).

The Probation Officer issued a PSR that calculated Petitioner's base offense level for Count One as 32 based on Petitioner being responsible for at least 500 grams, but less than 1.5 kilograms, of a methamphetamine mixture. (Id., Doc. No. 563 at ¶ 90). Petitioner's adjusted offense level was 46, in light of a two-level adjustment for possessing a dangerous weapon; a two-level adjustment for maintaining premises for the purpose of manufacturing and distributing a controlled substance; a six-level increase because the offense created a substantial risk of harm to the life of a minor; and a four-level increase for Petitioner being an organizer or leader of the offense. (Id. at ¶¶ 91-97).

Because the offense level for Count One was the highest offense level applicable to the grouped counts, pursuant to U.S.S.G. § 3D1.3 this was the offense level used. (Id. at ¶ 122).

Allowing for a three-level reduction for acceptance of responsibility, Petitioner's total offense level was calculated as 43. (Id. at ¶¶ 124-26). Based on Petitioner's criminal history category of III, the guidelines range was life imprisonment. (Id. at ¶¶ 139; 162).

Petitioner's counsel filed 32 objections to the PSR, arguing, inter alia, that Petitioner did not know and denied any statements made by seven of the people listed in the PSR as having provided evidence against him, that he had not taught people how to cook methamphetamine, and that he had not acted as a leader or organizer of more than five participants. (Id., Doc. No. 542: Objections to PSR). Petitioner's counsel also filed a sentencing memorandum and motion for a downward variance. (Id., Doc. No. 662: Sentencing Memo.).

At sentencing, this Court partially sustained Petitioner's objection to his role in the offense, finding that only a three-level increase for being a manager or supervisor was warranted. (Id., Doc. No. 675 at 1: Statement of Reasons). The Court overruled his remaining objections to the PSR. (Id.). This resulted in a total offense level of 42, a criminal history category of III, and a sentencing guidelines range of 360 months to life imprisonment. (Id.). This Court then determined that a 12-level downward variance was warranted under the sentencing factors in 18 U.S.C. § 3553(a), citing the fact that the conspiracy involved adults and did not show a substantial profit, Petitioner obtained his GED while in jail, his criminal history began later in life, he had health issues and would be in his seventies by the time he was released, and the need to avoid unwarranted sentencing disparities. (Id. at 3). With this reduction, the total offense level was 30, resulting in a sentencing guidelines range of 121-51 months of imprisonment. (Id.). On January 6, 2014, this Court sentenced Petitioner to 121 months of imprisonment as to Counts One, Two, Eleven, and Thirteen, and 120 months of imprisonment as to Counts Three and Six (the statutory maximum as to these counts), with the terms to be served concurrently.

4

(Id., Doc. No. 674: Judgment). Judgment was entered on January 15, 2014, and Petitioner did not appeal. (Id.).

Petitioner placed the instant motion to vacate in the prison system for mailing on January 12, 2015, and it was stamp-filed in this Court on January 15, 2015. Despite having obtained a downward variance from a potential sentence of life imprisonment to 121 months, Petitioner argues that his counsel provided ineffective assistance and that this resulted in his sentence being erroneously enhanced as to the conspiracy count, Count One. See (Doc. No. 4 at 6; 18).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits, and the record of prior proceedings" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's response, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**A. Petitioner's claim that he received ineffective assistance of counsel because counsel failed to investigate his case before advising him to plead guilty, thus rendering his guilty plea involuntary**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To state a claim of ineffective assistance of counsel in the context of a guilty plea, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective

5

standard of reasonableness. Id. at 688. The court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. For the second prong, a petitioner must show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

      Petitioner first contends that that attorney Cecelia Oseguera, the Assistant Federal Public Defender appointed to represent him, failed to conduct any investigation before advising him to plead guilty. (Doc. No. 4 at 1). Petitioner contends that counsel only met with him for approximately 20 minutes, that she was not interested in hearing his side of the story, and that she was unable to answer Petitioner's questions about the indictment and case. (Id. at 5). Petitioner also argues that his counsel was ineffective for allowing him to enter into a plea agreement that was inconsistent with the law of conspiracy under Pinkerton v. United States, 328 U.S. 640 (1946) and United States v. Collins, 415 F.3d 304 (4th Cir. 2005). (Id. at 14-16). Petitioner asserts that if counsel had spoken with the co-conspirators, she would have discovered that Petitioner had never met many of them, that those he did know were simply addicts, that Petitioner's pseudoephedrine purchases were merely to support his own drug habit, and that Petitioner was incarcerated during a portion of the conspiracy. (Id. at 5; 12). Petitioner further argues that counsel did not research his role in the offense or the amount of drugs for which he was responsible under Count One. He asserts that he was sentenced based on an artificially inflated quantity of methamphetamine—namely, the total amount involved in the conspiracy— and that if he had known that the entire amount of the drugs involved in the conspiracy could not

be attributed to him, he would not "have agreed to enter a plea" and would have insisted on going to trial. (Id. at 1; 6; 11-12; 14). Thus, he contends that his guilty plea was involuntary. (Id. at 9-11).

Petitioner's contentions of ineffective assistance of counsel are all without merit. First, Petitioner's assertion that his counsel did not adequately discuss the charges and any possible defenses with him contradicts his sworn statements during the plea colloquy that he had received and discussed the indictment with his attorney, that he fully understood the charges and the minimum and maximum punishments, that he had sufficient time to discuss any possible defenses with his attorney, and that he was satisfied with his attorney's services. (Id., Doc. No. 371 at ¶¶ 8-9; 27-29: Entry and Acceptance of Plea). Petitioner has not alleged or shown any extraordinary circumstances to overcome his sworn testimony during the plea colloquy. See Lemaster, 403 F.3d at 221-22. In addition to the fact that Petitioner cannot establish deficient performance, as discussed below, Petitioner has not shown any prejudice with respect to his contention that his counsel did not adequately discuss the charges and any defenses with him because the evidence is clear that his conduct supported the charges and that he did not have a valid defense. Therefore, it would not have been objectively reasonable for him to proceed to trial even if his counsel had delved further into the involvement of the co-conspirators and the length of the conspiracy. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

Next, Petitioner's contention that an investigation by counsel would have revealed that Petitioner "had not even met many of the co-conspirators" is subject to dismissal as conclusory. (Doc. No. 4 at 12); see United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations), cert. denied, 135 S. Ct. 47 (2014). Petitioner never identifies who his counsel should have interviewed, nor

7

does he provide any support for his contention that these witnesses would have provided information favorable to him. Furthermore, similar objections to Petitioner's lack of acquaintance with certain persons referred to in the PSR were overruled by this Court at sentencing. (Id., Doc. No. 542 at ¶¶ 4-5; 7-9; 11; 15: Objections to PSR; Doc. No. 675: Statement of Reasons).

Additionally, Petitioner's contention that he had a valid defense to the conspiracy conviction under Pinkerton and Collins based on his argument that he did not personally know all of the co-conspirators rests on a misunderstanding of the law of conspiracy. In Pinkerton, the Supreme Court recognized that overt acts of a criminal partner are attributable to others within a conspiracy when the acts are "reasonably foreseeable as a necessary or natural consequence of the unlawful agreement." In Collins, the Fourth Circuit held that, in determining the applicable penalty provisions under § 841(b), rather than simply relying on the quantity of drugs distributed by the entire conspiracy, the fact finder should determine the amount of drugs attributable to an individual under the principles in Pinkerton. Under Collins and Pinkerton, then, in a conspiracy a defendant is liable not only for the amount of drugs that he was personally involved with manufacturing or distributing, but also for the amounts manufactured or distributed by other members of the conspiracy whose actions were both "reasonably foreseeable and in furtherance of the conspiracy." United States v. Blackman, 746 F.3d 137, 141 (4th Cir. 2014) (internal citation and quotation omitted). Moreover, the Fourth Circuit has held that "[i]t is of course elementary that one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993). Thus, a conspirator need not know all of the members of the conspiracy to be liable for conspiracy. United States v.

8

Burgos, 94 F.3d 849, 858 (4th Cir. 1996). Rather, a drug conspiracy may consist of "'only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market . . . .'" Id. (quoting Banks, 10 F.3d at 1054).

Here, Petitioner was responsible for the reasonably foreseeable actions of his co-conspirators, and he has not shown that his plea agreement was inconsistent with the law of conspiracy under Pinkerton and Collins. Even if Petitioner did not know all of the members of the conspiracy or was not involved in the conspiracy for the entire length of its existence, this does not relieve him from responsibility as a participant in the conspiracy. Petitioner's alleged lack of familiarity with some of the co-conspirators and his contention that he was incarcerated during a portion of the conspiracy do not relieve him from responsibility for the role that he played in the conspiracy. Accordingly, his vague and unsupported assertions that he was unfamiliar with some aspects of the conspiracy are insufficient to show that counsel's conduct in the case was objectively unreasonable such that she was deficient with respect to her investigation.

Furthermore, Petitioner also cannot show prejudice with respect to counsel's alleged failure to investigate. First, Petitioner's assertion of prejudice is legally flawed because if the entire amount of drugs involved in the conspiracy was reasonably foreseeable to Petitioner, he could be sentenced based on that amount even though he was arrested and incarcerated during part of the conspiracy. See United States v. Vinson, 886 F.2d 740, 742-43 (4th Cir. 1989) (holding district court did not err under the Sentencing Guidelines in sentencing defendant based on the total amount of drugs sold during the lifetime of the conspiracy despite his having been arrested). Moreover, as the PSR shows, the entire amount of drugs involved in the conspiracy,

9

3,552.70 grams, was much higher than the amount charged in the indictment and to which Petitioner pleaded guilty, at least 500 grams of a mixture and substance containing methamphetamine. (Id., Doc. No. 563 at ¶ 14; Doc. No. 198: Superseding Indictment).

Nor would a decision to proceed to trial have been objectively reasonable in light of the extensive evidence of Petitioner's involvement in the conspiracy, which included evidence that Petitioner had purchased pseudoephedrine on 94 occasions between November 2009 and April 2011; that he had coordinated buying and selling pseudoephedrine among multiple people; that he, along with others, had manufactured the drug on numerous occasions; and that he had distributed the drug to other people. (Id., Doc. No. 563 at ¶¶ 20-21; 24-27; 30-41; 45; 47; 49; 51-52; 55-56; 62-63; 66-67; 69; 70-75; 77-84). Petitioner attempts to support his contention that he was sentenced based on an artificially inflated drug quantity by asserting that, although the conspiracy was alleged to have lasted for 45 months—from June 1, 2009, through February 13, 2013—he was incarcerated for 20 of those months (from April 2011 until October 2011 and from December 2011 until the present). (Doc. No. 4 at 12). Additionally, he contends that he was only responsible for 38 boxes of pseudoephedrine, or 37 grams of methamphetamine.[1] (Id.). Petitioner's contention is without merit.

First, the conspiracy that was charged was, in fact, from June 1, 2009, through June 18, 2012. (Crim. Case No. 5:11-cr-73-RLV-DSC-2, Doc. No. 198: Superseding Indictment). Moreover, Petitioner ignores the evidence from the pseudoephedrine sales logs that between November 2009 and April 2011, he purchased pseudoephedrine on 94 occasions. (Id., Doc. No.

---

[1] Not only is Petitioner's math based on the wrong timeframe for the conspiracy, it also is based on the wrong amount of drugs, as well as the wrong criminal history category, and it completely ignores the sentence he would have received based on the other counts of conviction.

10

563 at ¶ 84). Additionally, the statements of more than 26 persons interviewed by investigators clearly supported the finding that Petitioner was involved in a drug conspiracy and that he was not simply feeding his own habit. (Id. at ¶¶ 13-84). The evidence overwhelmingly showed that Petitioner not only manufactured methamphetamine, but that he also sold or provided it to others, he taught others how to make it, and he used other people to procure additional pseudoephedrine to use in manufacturing more methamphetamine. (Id.).

Furthermore, the amount of drugs attributed to Petitioner was based on an individual determination of his role in the conspiracy, rather than relying on the amount determined to be involved in the conspiracy as a whole. (Id. at ¶¶ 14; 84). Even considering only a few of the transactions in which Petitioner was directly involved, the quantity of drugs for which he was responsible exceeded the 500 grams needed to impose a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(8). Based on the 94 boxes of pseudoephedrine that Petitioner purchased and the evidence from a co-conspirator that each box yielded two grams of methamphetamine, this produced 188 grams of methamphetamine. (Id. at ¶¶ 77; 84). When he and several co-conspirators traveled to Myrtle Beach, they produced 280 grams of methamphetamine. (Id. at ¶ 39). Additionally, a co-conspirator testified that she purchased pseudoephedrine for Petitioner on 20 occasions, yielding another 40 grams of methamphetamine. (Id. at ¶ 79). These three events alone total 508 grams of methamphetamine and show that Petitioner's assertion that his counsel was deficient for allowing him to plead guilty to the conspiracy charge and for failing to challenge the amount of drugs attributable to him due to his "limited" involvement in the conspiracy is meritless. These facts also show that Petitioner cannot establish prejudice based on counsel's failure to object to the drug quantity, because his self-serving speculation as to the amount of drugs involved does not override the facts as set

11

forth in the PSR. See United States v. Randall, 171 F.3d 195, 210-11 (4th Cir. 1999).

Given the overwhelming evidence against Petitioner and the self-serving, vague, and unconvincing nature of his argument that he was merely feeding his own drug habit, Petitioner's assertion of prejudice fails.[2] Petitioner points to no drug quantities that were ascribed to him for conduct that occurred while he was incarcerated. Additionally, by pleading guilty, Petitioner received a reduction for acceptance of responsibility and his counsel was able to obtain a 12-level downward variance from this Court, which resulted in reducing his sentence from life imprisonment to 121 months. Accordingly, Petitioner cannot show that but for counsel's conduct he would have proceeded to trial, nor can he show that the result of the proceeding was fundamentally unfair. See Fugit, 703 F.3d at 260-61.

**B. Petitioner's claim that counsel failed to advise Petitioner that he could enter a guilty plea without a written plea agreement**

Petitioner also argues that counsel was ineffective for failing to advise him of the option to enter an open plea without a written plea agreement, resulting in Petitioner being sentenced "for an artificially enhanced quantity of methamphetamine." (Doc. No. 1 at 4; Doc. No. 4 at 1: Memo.). Because Petitioner did enter an open plea, without a written plea agreement, this argument has no basis in fact. See (Crim. Case No. 5:11-cr-73-RLV-DSC-2, Doc. No. 371 at ¶ 24). If Petitioner is attempting to argue that counsel was ineffective for not negotiating a written plea agreement, he has not alleged or shown any prejudice from not entering into a written plea agreement. Any contention that he would have proceeded to trial if he did not obtain a written

---

[2] As the Government additionally notes, any challenge to the sufficiency of the evidence was waived by Petitioner's guilty plea. See United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010).

plea agreement is belied by the fact that he pleaded guilty without a written plea agreement. See Fugit, 703 F.3d at 260-61. Additionally, Petitioner benefitted from pleading guilty without a written plea agreement because this preserved his right to appeal and to pursue post-conviction relief. Accordingly, Petitioner has not shown deficient performance or prejudice with respect to the nature of his guilty plea. See Strickland, 466 U.S. at 687-88.

### C. Petitioner's claim regarding counsel's conduct with respect to Petitioner's motion to vacate

Finally, Petitioner complains in his memorandum in support of the motion to vacate that his trial counsel did not timely provide him with a copy of his case file so that he could file this application for post-conviction relief. (Doc. No. 4 at 6). Because Petitioner is not constitutionally entitled to representation in a § 2255 proceeding, he cannot state a claim for ineffective assistance with regard to his present motion. See United States v. MacDonald, 966 F.2d 854, 859 n.9 (4th Cir. 1992).

### IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2255 motion to vacate is denied and dismissed.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's § 2255 motion, (Doc. No. 1), is denied and dismissed with prejudice.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473,

484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: June 29, 2015

Richard L. Voorhees
United States District Judge